PEOPLE ex rel. BREWSTER v. OLD GUARD OF CITY OF NEW YORK
et al.

(Supreme Court, Appellate Division, First Department.   November 20, 1903.)

1. ASSOCIATIONS — EXPULSION — TRIAL BOARD—OBJECTION TO JURISDICTION—
   WAIVER.
      A member of an incorporated association, not founded for profit, the
   constitution of which provided for expulsion for certain offenses after
   trial by the board of officers, waived any objection to a trial by such
   board or any member thereof when, in answer to a question at the be-
   ginning of the trial, as to whether he objected to being tried by any
   member of the board, he replied in the negative, allowed the investiga-
   tion to proceed, and participated in it to the end.

2. SAME—IRREGULAR ACTION—CURE—MANDAMUS—NEW MATTER SINCE APPLI-
   CATION—CONSIDERATION.
      The constitution of an association provided for expulsion after trial
   by the board of officers and action by the association on its recom-
   mendation.   The board of officers tried relator and recommended his
   expulsion.   At the next regular meeting no quorum was present, but it
   nevertheless fixed the date of an adjourned meeting, and relator was
   then expelled.   Thereupon relator applied for a writ of mandamus for
   reinstatement.   Pending trial on the alternative writ, the board of offi-
   cers resubmitted their recommendation at a regular meeting, at which
   it was acted upon, and relator was unanimously expelled.   These facts
   were set forth in the answer, and made to appear on the trial.   Held,
   that while, at the time of the application for the writ, relator was en-
   titled to reinstatement, for irregularity of the expulsion proceedings, yet
   such irregularity was cured at the regular meeting held before the trial,
   and the writ should have been denied.

Appeal from Special Term, New York County.

Action by the people, on the relation of Henry H. Brewster,
against the Old Guard of the City of New York and others.   From
a final order directing the issuance of a peremptory writ of mandamus,
respondents appeal.   Reversed.

See 82 N. Y. Supp. 1110.

Argued before VAN BRUNT, P. J., and HATCH. PATTERSON,
INGRAHAM, and LAUGHLIN, JJ.

Asa B. Gardiner, for appellants.
F. De Witt Wells, for respondent.

   PATTERSON, J.   By final orders from which this appeal is taken,
the relator was granted a peremptory writ of mandamus restoring
him to membership in the Old Guard of the City of New York, and
assessing damages sustained by his alleged illegal expulsion from that
organization.   The final orders were made after a trial upon an al-
ternative writ.   The relator was a life member of the Old Guard,
by which is meant that, having paid a certain gross sum, he was
thereafter exempt from the payment of any further annual dues.
His relation to the Old Guard, except in that respect, was the same
as that of any other member.   The association is incorporated, and
is, in one aspect, a military organization.   Chapter 574, p. 890, Laws
1873, as amended by chapter 293, p. 368, Laws 1889.   It is not an
association formed for profit.   It has a constitution and by-laws,
which it had power to make under the provisions of section 3 of an

act of the Legislature of April 22, 1868, relating to its incorporation (Laws 1868, p. 585, c. 284). That section reads:

"The said corporation shall have power to make and adopt a constitution and by-laws, rules and regulations for the admission of members and their government, the election of officers and their duties, the suspending or expelling of members and for the safe keeping of its property and funds, and from time to time to alter or repeal such constitution, by-laws, rules and regulations."

By section 6 of article 6 of the constitution, it is provided that:

"Unmilitary conduct unbecoming a soldier and a gentleman, and to the prejudice of good order and military discipline, intoxication on duty or in uniform, shall constitute grounds for charges against members, and their trial before the board of officers."

Section 7 of the same article provides that:

"Upon a complaint being made against a member, it must be reduced to writing and contain a specification of the offense complained of. It must be signed by the complaining member and presented to the board of officers."

Provision is then made for notifying the accused member, and serving him with a copy of charges, and requiring him to appear before the board at a time and place specified. Section 8 of that article provides that:

"Upon the date specified in said notice, the board of officers shall hear the statements and consider the proof offered and determine the matter. If such accused shall be found guilty of the charges and specifications, or any of them, by a vote of the majority of the members of said board, the said member may be recommended to the organization for expulsion or such other penalty or reprimand as the said board may determine."

Section 1 of article 10 of the constitution provides for the creation of a board of officers, which shall be composed of the commandant, the line officers of the several companies, and certain other persons; and by section 4 of article 10 it is provided that this board of officers shall have the charge of all property of the organization, prescribe rules for admission to membership, not inconsistent with the provisions of the charter and constitution, and take such action in relation to membership as provided in article 4 and article 6 of the constitution. Article 13 of the constitution provides that a regular monthly meeting shall be held at the headquarters of the organization on the first Tuesday of each month at 8 o'clock p. m., except the July, August, and September meetings may be dispensed with by a resolution to that effect at the June meeting. In case the first Tuesday shall fall upon a legal holiday, the regular meeting shall be held on the first Thursday thereafter.

When the relator became a member of the Old Guard he subjected himself to the control of the provisions of the constitution and by-laws. On the 31st of October, 1902, he was charged with the commission of a grave offense, namely, that he had falsely accused the commanding officer of the Old Guard with the theft of $20. The charge was formulated in the following words:

"To the Board of Officers of the Old Guard: I hereby charge Henry H. Brewster, a member of the Old Guard, with conduct unbecoming a soldier and a gentleman, and to the prejudice of good order and military discipline, in that he falsely charged S. Ellis Briggs, Major of the Old Guard and Com-

mandant, with having received and diverted to his own use, certain moneys, to wit, the sum of Twenty dollars ($20), falsely pretended and claimed to have been paid by him, said Brewster, on March 18, 1901, to the said Ellis Briggs, Major and Commandant, as aforesaid, for the amount of a certain subscription, made by him, said Brewster, to the Old Guard, for the expenses of the anniversary dinner and celebration held in April 1901. Dated, New York, October 20, 1902. David H. Lichtenstein, "Lieut. 'C' Company."

The relator was notified of this charge, and a time was appointed for a hearing thereon. He attended in person and by counsel, was arraigned, and pleaded "Not guilty." He was asked if he objected to being tried by any member of the board, to which he responded, "I do not." The trial then proceeded, and at its conclusion the relator was found guilty of the charge, and the board recommended that he be expelled from the organization. The testimony taken at this investigation or trial appears in the record, and abundantly justified the conclusion reached by the board, and its recommendation. The action of the board of officers required confirmation by the members of the association at a regular monthly meeting. The next such meeting after the finding of the trial board was made should have been held on Thursday, November 6, 1902—Tuesday, November 4th, being election day and a legal holiday. On the evening of November 6th only eight members of the organization were present. Those in attendance undertook to adjourn the meeting to November 11th. They clearly had no power to do that, for they could not pass upon any business matter, and therefore were powerless to designate any other time for a general meeting than that fixed by the constitution. Nevertheless a meeting was held on November 11th, of which the relator was previously notified, and at which he attended. Ninety-five members were present, and it was moved, seconded, and voted that "the report and recommendation of the board of officers on the charges against Henry H. Brewster be now confirmed, and the said Brewster be expelled from the organization," and he thereupon was expelled. Subsequently thereto, and before a meeting of the organization held in January, 1903, and to which reference will presently be made, the relator made his application to the Supreme Court for a writ of mandamus to compel his restoration to membership. An alternative writ was issued on the 4th of December, 1902, was made returnable within 20 days, but thereafter, by stipulation, the time of the defendants to answer was extended to January 8, 1903. On the last-named day an answer or return to the writ was filed. In it is set forth, among other things, the following:

"Before any action could be taken to formally notify said relator in writing of the adoption of said recommendation, or to drop his name from the roll in accordance with said affirmative vote [referring to the action taken on the 11th of November, 1902], he protested that members of the organization did not generally know that his case would then be considered, and that the meeting to pass upon it ought to be held on the first Tuesday in the month. Thereafter the said board of officers, at a meeting thereof, expressed by vote the fullest desire that the said Henry H. Brewster shall not have any possible reason to complain that the vote of the organization was not rendered upon full notice and understandingly, and accordingly resolved that their recommendation be resubmitted at the next regular meeting, to be held on Tuesday evening, January 6, 1903, at the armory aforesaid, and that the said

relator be duly notified of the fact that the said recommendation would be resubmitted to the organization at said meeting on January 6, 1903, and that his name had not yet been dropped from the roll, and would not be dropped until action by said meeting."

It is then stated in the answer that the relator was duly notified of this meeting, and that the recommendation with reference to his expulsion would be acted on at a meeting to be held on January 6, 1903. It is further set forth that at the regular meeting on that evening the recommendation of the board of officers was resubmitted, was adopted by a unanimous vote, and that thereupon the relator was duly expelled, and his name stricken from the roll of membership.

The proceedings of the meeting of the board of officers held on December 29, 1902, providing for the resubmission of the recommendation to the organization at a regular meeting to be held on Tuesday evening, January 6, 1903, appear in the record. The court below therefore had before it the whole history of the action of the Old Guard with respect to the expulsion of the relator. It had the charge made against him; the trial of that charge before the board of officers; the way in which that body was constituted; the evidence taken before it; the findings of the board of officers; their recommendation; its unauthorized submission at an assemblage of members which was not a regular meeting; the recognition of that irregularity and insufficiency by the resubmission of the findings and recommendation at a regular and duly authorized meeting, of which the relator was properly notified; and the action taken thereupon before the return day of the alternative writ.

Upon that statement of the case, there are two questions presented for consideration. The first has reference to the constitution of the board by which the relator was tried. It is urged that it was improperly constituted, because it was in part composed of persons who, if not actually hostile to, were biased against, him. It is plain that the objection does not apply to the board of officers as a whole. There was no other body which, under the constitution of the organization, could act as a tribunal to investigate charges against accused members. If the relator were not tried before that body, he could not be tried at all. But it is claimed that certain of the members of the board were disqualified from acting by reason of their connection with the charge made against the relator. That charge did not involve merely a personal controversy between the relator and the commandant of the Old Guard. It originated in a unanimous resolution of the board of officers. The relator in October, 1902, had made and formulated a charge of dishonesty against the Major commanding the organization. It had been considered by the board of officers. It was to the effect that the relator had paid to the commanding officer the sum of $20, to be handed to the treasurer of a committee of the Old Guard, and that the commanding officer had not delivered it to the treasurer, but retained it. The board of officers, having investigated the matter, found that the amount had been received by the treasurer, and thereupon a resolution was passed that the relator having made a charge against the commandant, which, upon investigation, proved to be absolutely false, it was the sense of the board that the resignation of the

relator be demanded at once. The relator having refused to resign, a further resolution was offered and unanimously passed as follows:

"That charges be preferred against Mr. H. H. Brewster (for slandering·a Comrade, Major S. Ellis Briggs) for conduct unbecoming a soldier and gentleman and prejudicial to good order and military discipline."

Thus the charges made against the relator did not proceed merely from an aggrieved member. It had become a matter in which the whole organization was concerned. The crime which the relator had imputed to the commanding officer was a matter which deeply affected the entire association, every member of which was notified by the relator's charge that he belonged to an organization commanded by a petty thief.

The gist of the relator's objection is that he was not tried by a tribunal fairly constituted. The charges against him were signed by Mr. Lichtenstein, not as an individual, but in his capacity as lieutenant of one of the companies composing the Old Guard, and in compliance with the requirement of the resolution above quoted. He was one of that board of officers. Another member of that board was Lieut. Ward, who, previous to the trial, it is said, had told'the relator that he must resign or be expelled. Lieut. Ward did not vote as a member of the court, but it appears he sat during its proceedings. In the case at bar the relator submitted to the jurisdiction, accepted the court as constituted, allowed the investigation to proceed, and participated in it to the very end. He could waive his objection to jurisdiction, if there were any (People ex rel. Deverell v. Musical Mut. Protec. Union, 118 N. Y. 107, 23 N. E. 129), and he did so. By his acquiescence he induced the board of officers to proceed with the investigation, and, as said before, the evidence upon which they acted was abundantly sufficient to sustain their finding. Under the circumstances, we are of the opinion that the relator cannot now claim that he was tried by a court unfairly or improperly organized. He does not object to the competency of the whole court. On becoming a member he had agreed to abide by the constitution. It expressed the contract by which he consented to be bound as to his disfranchisement (Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495); and we are not prepared to hold that he could not be tried at all because the charge was directed to be made by the board of officers, which had acted previously on· the subject-matter on another occasion, especially in view of the unqualified assent given by him to proceeding·before that body.

A second subject is presented for consideration, and that is the irregularity of the meeting of November, 11, 1902, at which the recommendation of the board of officers was first adopted. As before remarked, everything that was done at that meeting respecting the relator's cause was irregular and ineffectual and utterly void, and, if the matter stopped there, the relator would be entitled to reinstatement; but this irregularity substantially admitted by the respondents was cured at the January meeting of 1903. The action of the board of officers remained valid. It was the adoption by the body of the organization that was alone void. The proceedings of the January

meeting, which were had after due notice to the relator, are all referred to in the answer of the respondents, and testimony with respect to those proceedings thus set up in the answer as new matter was given upon the trial of the alternative writ, and forms part of the record now before us.   There can be no question, therefore, of the sufficiency of the plea of new matter.   It appeared that the irregularity and infirmity of the relator's expulsion was cured at a regular meeting duly called, of which the relator had due notice; and, in the exercise of its judicial discretion, the court should have given heed to the fact that, notwithstanding the relator may have been entitled to restoration to membership at the time he applied for the writ, yet at the time of the trial he had been duly expelled, and a sufficient legal reason then existed for denying the writ.   The learned judge at Special Term considered that what was done in the effort to correct infirmities at the trial and in the procedure thereafter may not be considered, as they could not affect the rights of the relator.   We cannot agree with that view.   What occurred at the January meeting was strictly new matter.   It is in the nature of an admission that the antecedent procedure was void.   The proceeding in mandamus is assimilated by the Code to the proceeding in an action.   New matter arising after the beginning of an action may be set up by permission of the court. Here it was set up in the answer, and was submitted to and received by the court; no objection being taken, that we can find, that it was pleaded without permission—only that it was irrelevant.   It thus being made to appear that the expulsion of the relator ultimately was duly made at a regular meeting of the organization, the proceeding should have been dismissed.

The final orders should be reversed, with $10 costs of the appeal and printing disbursements, and the motion for a mandamus denied; but inasmuch as at the time the motion was made the relator may have been entitled to the writ, and his right is defeated by new matter arising after the writ was issued, the denial of the motion should be without costs.   All concur.