FRANK AUSTIN, Appellant, v. ENOS V. DUTCHER, as Chief Engineer
or President of NEW YORK CITY DIVISION, No. 105, OF THE
GRAND INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS,
Respondent.

*Trial, before a voluntary association, of a member thereof — when the courts may not
interfere — right to a bill of particulars and to an adjournment.*

The constitution and by-laws of a voluntary association constitute the sole rule
which governs the relations between the association and its members, and the
courts cannot redress any action of the association in expelling or punishing a
member when such action has been taken in accordance with the express pro-
visions of the constitution and by-laws.

After a member of a voluntary association had been brought to trial upon writ-
ten charges served upon him, and after evidence in support of the charges had
been read, the accused member, in response to the question whether he had
anything to say to the charges, requested a copy of the specifications, or a bill
of particulars, specifying what the charges were, and time to prepare a defense.
No response was made to this request and the accused member made no further
statement in answer to the charge, not even denying it. The trial proceeded
and resulted in a finding that he was guilty and a sentence of expulsion was
imposed.

*Held,* that the refusal of the association to grant the desired adjournment or bill
of particulars, to neither of which the accused member was entitled under the
constitution of the association did not require the reversal of its action,
which appeared to have been strictly in accordance with the provisions of the
constitution.

*Semble,* that the question whether the charges were sufficiently specific to require
a defense was a question for the association itself to determine.

APPEAL by the plaintiff, Frank Austin, from a judgment of the
Supreme Court in favor of the defendant, entered in the office of
the clerk of the county of New York on the 19th day of July, 1900,
upon the decision of the court rendered after a trial at the New
York Special Term dismissing the complaint.

*Thomas P. Wickes,* for the appellant.

*James C. Foley,* for the respondent.

INGRAHAM, J. :

This action was brought against the defendant, as chief engineer
or president of the New York City Division, No. 105, of the Grand
International Brotherhood of Locomotive Engineers, a voluntary

unincorporated association, for the reinstatement of the plaintiff as a member of the association. At the end of the plaintiff's case the complaint was dismissed, the court filing a decision stating as the grounds of the dismissal that the plaintiff had not exhausted the remedies provided for by the constitution and by-laws of the association of which he was a member, by an appeal to the Grand International Brotherhood of Locomotive Engineers' Convention, which seems to have been a convention of associations similar to the association of which the defendant was the chief officer.

As the complaint was dismissed at the close of the plaintiff's case, if upon any ground the plaintiff was entitled upon the facts proved to any relief, the dismissal was error; but if upon the facts the plaintiff must fail in obtaining any relief in this action, then the judgment should be affirmed, although the reasons given for the dismissal be not approved.

It seems that the plaintiff had been a member of this association for several years, until December 3, 1898, when he was expelled at a regular meeting of the association. This association was governed by a constitution and by-laws. By article 5, section 1, of such constitution it is provided: " Should it become known to any member of this Brotherhood that a member thereof has been guilty of any unbecoming or disgraceful conduct or of drunkenness, or of having in any way violated any law, rule or regulation of the order, it shall be his duty to at once bring charges in writing against such member before the subdivision to which said offending member belongs." In pursuance of this provision one M. F. Rhodes, who was a member of the association, presented to it, at a meeting thereof on that day, a charge against the plaintiff in writing. The plaintiff was present at this meeting. This charge was as follows : " I prefer charges against Bro. Frank Austin of this division for dishonesty and conduct unbecoming a member of this Brotherhood. I charge him with taking property that belonged to the Manhattan Railway Company of the City of New York and appropriating it to his own use and selling the same to others, thereby causing a loss to said Railway Co. and bringing disgrace on this Division of Locomotive Engineers."

This charge would seem to come within the provision of the constitution before cited, and if proved would certainly be "unbecoming

and disgraceful conduct." By section 2, article 5 of the Constitution, it is provided that "the C. E. of the subdivision, in which said charges are preferred, shall at the first meeting possible bring them to the notice of the members · present and appoint a committee of three to investigate." At this meeting of November fifth these charges were presented to the members present and a committee to investigate was appointed. On December 1, 1898, a copy of these charges was served upon the plaintiff, with a notice from the committee that they would present their findings at the next regular meeting of the association to be held on Saturday evening, December third, and the plaintiff was notified to. be present and present his side of the case. On December 3, 1898, a meeting was held at which the plaintiff was present, and at this meeting the committee reported on the charges against the plaintiff. The charge was read and a written statement of Rhodes, who made the charge, was also read. There was also a statement of one McFarlan, who was also a member of the association. Both Rhodes and McFarlan were present, and the presiding officer asked Rhodes if he had anything further to add to his written statement, to which Rhodes replied that he had not, but subsequently he made some further statement to the members present. There was then some discussion about the report of the committee, which appears to have been against the plaintiff, finding him guilty of the charge, when the presiding officer asked the plaintiff if he had anything to say. The plaintiff then made a request that he be granted a copy of the charges or specifications, or bill of particulars, specifying what the charges were, and time to prepare a defense. He then made a written protest which stated that it was necessary that he should have some information on or about the case to defend himself ; but no statement appears to have been made that he had no knowledge of what the charge was; and to this protest and oral request for time no response was made by the presiding officer or any member at the meeting. After this the matter seems to have been discussed. The plaintiff, however, made no further statement in answer to the charge, not even denying it; whereupon a vote was taken, which stood eighteen to five against. the plaintiff. The plaintiff also introduced in evidence the minutes of the meeting, from which it appears that a vote was taken as to what penalty

should be inflicted. Twenty-four members of the association voted for expulsion and fourteen against it, and the chief engineer declared the plaintiff expelled.

By section 3 of article 5 of the constitution it is provided that "should the committee find any evidence against the accused he shall be furnished by the chairman of the committee with a copy of the charges made against him, and notified when to appear for trial, at which trial the said committee shall produce the evidence against him, and the evidence in his defense shall be heard, after which a vote of the members present shall be taken as to his guilt or innocence, and a majority vote shall be necessary to declare him guilty. If found guilty, the ballot shall be passed and a majority vote of all members present shall be sufficient to expel, suspend, reprimand or to censure him."

It is not disputed but that the rule in regard to voluntary associations of this character is that the constitution and by-laws are the sole rule that governs the relations between the association and its members, and that the courts cannot redress any action of the association in expelling or punishing a member when such action has been taken in accordance with the express provisions of the constitution and by-laws. As was said in *White* v. *Brownell* (2 Daly, 359), "Individuals who form themselves together into a voluntary association for a common object may agree to be governed by such rules as they think proper to adopt, if there is nothing in them in conflict with the law of the land; and those who become members of the body are presumed to know them, to have assented to them, and they are bound by them." This case has been cited with approval in many cases and was followed in *Lewis* v. *Wilson* (121 N. Y. 284) where the court say: "But whether the committee should decide rightly or wrongly does not change the attitude of the plaintiff as a member of the association, or qualify his obligation to submit to the decision of the agreed tribunal under pain of suspension. All that he could require was that the investigation should be conducted *bona fide*, upon notice to him and an opportunity to be heard, and that the decision made should be within the scope of the jurisdiction conferred on the committee."

If, therefore, this investigation was conducted *bona fide*, with notice to the plaintiff which gave him an opportunity to be heard,

and the decision was within the scope of the jurisdiction conferred upon the organization by its by-laws, the plaintiff cannot ask a court of equity to reverse the action of the association and restore him to membership. It seems to me that this investigation was exactly in accordance with the provisions of the constitution; that the plaintiff had all the rights there secured to him, and that the organization in expelling him acted clearly within the powers conferred or reserved to it by the constitution. As required by section 1 of article 5 of the constitution, the charge was made in writing by a member of the association, and brought before the association at a regular meeting at which the plaintiff was present; and a committee of three was appointed to investigate. The committee found evidence against the accused, and then, as provided for by section 3 of the constitution, a copy of the charges made against him was served upon him, and he was notified to appear at a meeting of the association for trial at a time named. He duly appeared for trial at the meeting, when the committee, as required by section 3 of the constitution, produced the evidence against the plaintiff. He was then asked if he had anything to say as to the charges; and then, for the first time, he objected to the form of the charges and requested a copy of the specifications, or a bill of particulars specifying what the charges were, and time to prepare a defense. The constitution gave him no right to such an adjournment or to specifications or a bill of particulars. The charges that were actually made by a member were served upon the plaintiff, and that was all that the constitution required. But if these charges had not been sufficient, he certainly was required to object to them at the commencement of the proceedings against him on December third, and before the committee had presented to the association the evidence against him. Whether or not the charges were sufficiently specific to call for a defense was a question for the association itself to determine. The charge in writing had been made to the association, and by it the plaintiff was charged with taking property that belonged to the Manhattan Railway Company and appropriating it to his own use and selling the same to others. This certainly was specific enough to require an answer. The plaintiff had either taken the property or he had not. If he had denied the charge, so as to raise an issue, a different question would have been presented, but before he presented his protest

against the sufficiency of the charge, the written statement of the person making the charge had been read, together with the statement of McFarlan, and a statement by the committee that they had examined several witnesses, giving the substance of the testimony. These statements specified the property that was taken and gave the particulars and the date when the property was taken. The plaintiff then had full knowledge of the charge that was made, with all the information that was necessary to enable him either to admit or deny the charge, and the refusal of the association to give him further time, in the absence of any statement that he had any witnesses whom he wished to produce, or anything from which the association could see that the application was made in good faith, was not a violation of any right of the plaintiff's which would entitle him to a reversal of the action of the association.

But an examination of section 3 of the constitution, to which attention has been called, makes it quite evident that it was not contemplated that these proceedings should be adjourned. The section provides that the committee upon the day fixed for the trial should produce the evidence against the member, and that the evidence in his defense should be heard, after which a vote of the members present should be taken as to his guilt or innocence. This is the constitution of the association of which the plaintiff was a member, and by it he was bound; and if the trial was conducted in accordance with the provisions of this constitution and he had proper notice of the charges and an opportunity to be heard, he cannot complain. The plaintiff heard the statement of the members of the association read accusing him of theft, and without even a denial of the truth of these charges, he simply protested against the proceeding and desired an adjournment. Certainly a refusal of such a request was not such a violation of the plaintiff's right as would entitle him to the interference of the court in reversing the action of the association in expelling him. Taking this view of the question, it is not necessary to discuss the grounds upon which the court below placed its decision, as I am satisfied that the plaintiff had a fair trial before the tribunal authorized by the constitution and by-laws to act; that all the provisions of the constitution were fully complied with, and that the plaintiff was not entitled, upon his own evidence, to any relief.

It follows that the judgment appealed from should be affirmed, with costs.

O'BRIEN and McLAUGHLIN, JJ., concurred; VAN BRUNT, P. J., and HATCH, J., concurred in result.

HATCH, J.:

I concur in the result of this opinion upon the ground that the plaintiff, having submitted himself to the jurisdiction of the association, was bound in the first instance to exhaust his remedies by appeal to the higher constituted authorities before he became entitled to maintain an action for the settlement of his rights. This he did not do, and he has, therefore, no standing to maintain this action.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.