(156 App. Div. 268.)

### RICHARDS v. WELLS FARGO EXPRESS CO. et al.

(Supreme Court, Appellate Division, First Department. April 18, 1913.)

1. CORPORATIONS (§ 139*)—OWNERSHIP OF CERTIFICATE OF STOCK—PRESUMPTIONS.

   The possession by a third person of a certificate of stock transferred in · blank raises a presumption that he is the owner thereof, unless rebutted by the stronger presumption of continued ownership by the original owner.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469; Dec. Dig. § 139.*]

2. CORPORATIONS (§ 139*)—OWNERSHIP OF CERTIFICATE OF STOCK—PRESUMPTIONS.

   An owner of corporate stock indorsed the blank transfer on the back of the certificate without inserting the name of any transferee. He continued for 21 years, until his death, to receive the dividends. After his death, and after the death of a brother, the certificate was found among worthless papers of the brother, who was a person of methodical habits. Held, that the presumption that the stock remained the property of the original owner until his death outweighed the presumption that it had been transferred to the brother.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 467, 469; Dec. Dig. § 139.*]

Appeal from Special Term, New York County.

Action by Artie F. Richards, individually and as administratrix with the will annexed of George C. Porter, deceased, against the Wells Fargo Express Company and others. From a judgment for plaintiff, defendants appeal. Reversed, and complaint dismissed on the merits.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles W. Pierson, of New York City, for appellant Wells Fargo Express Co.

A. S. Gilbert, of New York City, for appellants Porter and Drost.

Robert M. Boyd, Jr., of New York City, for respondent.

SCOTT, J. This controversy involves the question of the ownership of certain shares of the stock of defendant Wells Fargo Express Company. On June 30, 1884, one Albert G. Porter, now deceased, was the owner of and in possession of five shares of stock in the defendant Express Company. On that date he indorsed the blank transfer on the back thereof, but without inserting the name of any transferee. At that time Albert G. Porter was employed at Lowell, Mass. He had a brother, George C. Porter, through whom the plaintiff claims, who resided at Springfield, Vt., where he was the assistant cashier of a bank. The mother of Albert and George Porter also lived at Springfield. Albert G. Porter seems to have acquired intemperate habits, and in 1888 returned to Springfield, where he and his mother and brother lived together until the mother died in 1889. · After her death the brothers closed the house and left Springfield. Albert Porter went somewhere in the South, where he apparently lived until his death in 1907.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

George Porter went to live with a married daughter in New Jersey, with whom he lived until he died, also in 1907, a few months later than his brother. George Porter took with him to his daughter's house one or more trunks containing, as his daughter testified, "all sorts of things, papers of various kinds, estate papers, and other effects of various kinds." George Porter had also some securities of various kinds, which he kept, while he lived with his daughter, in a locked box in a closet in his room. All these securities he transferred to his daughter some time before his death, although he retained them in his own possession. Albert Porter continued to regularly receive the dividends on the Express Company stock down to the time of his death, although it is in evidence that he stated to the defendant Drost, afterwards his executor, some time after he had left Springfield, that he had lost or mislaid the certificate. After Albert Porter's death his executor applied for and received from the Express Company a duplicate certificate, which he sold, and which is now held by the defendant Catherine C. Porter. In June, 1910, plaintiff, the daughter of George Porter, was about to move her residence, and she or her husband came upon the box containing a lot of papers, among which were a number of stocks and bonds of no value, and the certificate of five shares of stock of defendant Express Company standing in the name of Albert G. Porter, indorsed by him in blank. The box in which these papers were found was not the box in which George Porter had kept the securities which he transferred to his daughter.

[1] Upon these facts the judgment appealed from awards the ownership of the stock to plaintiff, upon the theory that the possession of the indorsed certificate by George Porter raised the presumption that he was the owner of it. Undoubtedly there is room for such a presumption, unless it is rebutted by the stronger presumption of continued ownership by Albert Porter. We are of opinion that it is so rebutted.

[2] It is easy to understand that, when the brothers broke up their home and left Springfield, the certificate of stock might by mistake have found a place among the papers which George Porter took with him. The circumstances that Albert Porter, while he was still living away from home, indorsed the blank transfer, may indicate that he intended at some time to part with the stock; but, as no name of a transferee is inserted, it is impossible to say to whom he intended to make the transfer. On the other hand, George Porter, who appears to have been a person of methodical habits, would scarcely, if he owned the stock, have allowed it to remain in a box with a quantity of worthless papers, or have permitted his brother, for 21 years, to receive the dividends upon it. Surely, if he had owned it, and knew that it was among his papers, he would have kept it in a box in which he kept his valuable securities, and would have transferred it to his daughter, when he made over to her all his other property. It is a case of presumption against presumption, and we think that, upon all the facts, the presumption that the stock remained the property of Albert G. Porter until his death far outweighs the presumption that it has been transferred to George C. Porter and was his property when he died.

The judgment appealed from must therefore be reversed, and the complaint dismissed upon the merits, with costs in this court and at Special Term to each of the defendants separately appearing and answering. All concur.